DOMENGEAUX, Judge.
Plaintiff, Lincoln Big Three, Inc., (Lincoln), filed suit against Daniels Welding Electrical and Construction Company, Inc., (Daniels), to recover $11,511.84 allegedly due for various materials and supplies purchased by defendant on an open account, including industrial welding gases. Plaintiff claimed that the amount sought included past due rental fees (demurrage charges) on cylinders in defendant’s possession which belonged to Lincoln but had not been returned; the amount also reflected the cost of the cylinders in the event defendant failed to return the containers to Lincoln’s place of business. Additionally, plaintiff alleged that defendant owes $1,356.50, the unpaid balance on a promissory note held by Lincoln. The note was executed by Daniels in connection with the sale and chattel mortgage of a welding machine. After a trial on the merits, judgment was rendered in favor of Lincoln. Daniels has appealed suspensively. We affirm.
FACTS
The primary dispute in this case concerns the legal status of the steel cylinders. Lincoln and Daniels Welding began a business relationship in 1973. Lincoln, a domestic corporation, sells welding gases (oxygen, acetylene, and argon) which are contained in the cylinders. Lincoln delivers the filled *937 containers by truck to its customers; the containers remain the property of Lincoln as specified in each shipping order form which sets out the quantity, price, and terms of each order. The invoice also provides for a monthly rental charge for all cylinders retained by the customer longer than thirty days. The invoice also serves as the cylinder record. This contract establishes the custom and use between buyer and seller in the welding supplies industry.
Lincoln also picks up empty cylinders from customer work yards or shipping docks (if the cylinders are taken offshore). Lincoln’s truck driver issues a receiving report, signed by the customer, for all cylinders returned. This service is a courtesy afforded the customer since the contract requires the customer to return the cylinders to Lincoln’s place of business.
Daniels Welding argued that it is not responsible for any unreturned cylinders. Defendant contends that Lincoln’s drivers had picked up cylinders from its work yard without properly crediting its account. Daniels makes reference to a number of “surplus bottles” on hand at plaintiff’s store in Lake Charles which have never been credited to any account whatsoever. While Lincoln admits that occasionally some cylinders are picked up under circumstances that prevent identification of the customer entitled to credit, it contends that the surplusage has been exaggerated by defendant and further points out that at the time it filed its petition against defendant, Daniels had thirty-nine unreturned cylinders with demurrage owed covering an extended period of time. Defendant further claims that its own list of serial numbers on cylinders it received substantiates plaintiff’s imprecise and irresponsible record-keeping which has resulted in erroneous demurrage fees and shortages.[1] However, plaintiff points out that there were never sufficient “surplus bottles” to compensate for defendant’s shortage; nor do the serial numbers indicate any differential because the serial numbers never had been recorded on the shipping invoices when cylinders of gas were delivered to customers.
As to the promissory note, the plaintiff credited all installment payments made by defendant; plaintiff corrected defendant’s sales account when payments were mistakenly credited to defendant’s open account.
The trial judge determined that Daniels Welding was indebted to plaintiff for both the open account and the note in default. He awarded Lincoln Big Three $11,511.84 (with legal interest from date of judicial demand) which amount represented demur-rage fees, value of the cylinders and unpaid materials; and $1,356.50 (with interest fixed at 8% per annum from September 17, 1978, plus 33⅛% of the principle and interest as attorney’s fees) representing the balance on the promissory note. All costs were assessed to defendant.
The judgment of the district court further recognized Lincoln’s vendor’s lien and chattel mortgage and privilege on the Lincoln gas driven, skid-mounted welding machine.
ISSUE
Defendant’s sole contention on appeal is that the trial judge erred in holding that custom and usage applied to the relationship of depositor and depositary with regard to the delivery and return of the cylinders.
LOAN FOR USE
While some aspects of this system of delivery and return may resemble deposit, the proper characterization of the relationship between Lincoln and Daniels Welding is a loan for use, set forth in La.C.C. Art. 2891:
“There are two kinds of loans:
The loan of things, which may be used without being destroyed;
*938 And the loan of things, which are destroyed without [by] being used.
The first kind is called loan for use or commodatum.
The second kind is called loan for consumption or mutuum.” La.C.C. Art. 2891.
A Joan for use is defined by the provisions of La.C.C. Art. 2893:
“The loan for use is an agreement, by which a person delivers a thing to another, to use it according to its natural destination, or according to the agreement, under the obligation on the part of the borrower, to return it after he shall have done using it.” La.C.C. Art. 2893.
The lender remains the owner of the thing lent. La.C.C. Art. 2895. In the case sub judice, this was expressly stated in the shipping invoice. Further, the loan for use is essentially gratuitous. La.C.C. Art. 2894. The charge imposed on Daniels was a demurrage, i.e. an amount, in the nature of stipulated damages, that was fixed by contract as remuneration to the owner of the cylinders for detaining them beyond the number of free days (30) allowed by the contract. Therefore, the use of the cylinders by Daniels remained essentially gratuitous.
There are certain obligations of the borrower which are incident to a loan for use. Since the borrower is using the movable, he must not only preserve it but must preserve it in working condition.
“The borrower is bound to keep and preserve, in the best possible order, the thing lent. He can use it only in the manner for which it is fitted by its nature, or which is allowed by the agreement, under the penalty of damages.”[2]
La.C.C. Art. 2898; see Comment, Bailment and Deposit in Louisiana Law, 35 La.L.Rev. 825, 833-834 (1975).
The consequences of delay or loss result in liability imposed on the borrower. La. C.C. Art. 2899.[3]
The trial judge determined that Lincoln Big Three sustained the burden of proving that defendant understood and accepted the terms of the contract, and that Lincoln also established that a certain number of cylinders were unaccounted for by Daniels. Furthermore, the trial judge concluded that Daniels failed to support its contention that there existed a discrepancy between appellant’s records and Lincoln’s records which appellant claims indicates error in the delivery and return system. We find no manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trial judge correctly held that Daniels Welding was bound to plaintiff for the rental (demurrage) fees, the value of the cylinders, and the remaining unpaid installments on the promissory note.
DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed, with appellate costs assessed against appellant, Daniels Welding Electrical and Construction Company, Inc.
AFFIRMED.

. These serial numbers are stamped on every cylinder, but are not utilized by Lincoln for any record-keeping purpose.

. This is an erroneous translation from the French text of the article, i.e., "in the best possible order” should read "as a prudent administrator.”; See editorial comment under La.C.C. Art. 2898.

. La.C.C. Art. 2899 provides:
"If the borrower employs the thing to another use or for a longer time than has been agreed on, he shall be liable for the loss which may happen, although the same might have happened by chance.”